April 14, 1939


Honorable Tom Seay
County Attorney
Potter County
Amarillo, Texas

Dear Sir:

Opinion No. O-580
Re:  Does the definition of "chauf-
feur" contained in Sec. 1 (g), Art.
6687a of Vernon's Annotated Statutes,
include linemen, troublemen, meter
readers, meter testers, a collector,
a local manager, an engineer, a me-
chanic, a department head, a power
salesman, all employees of a gas
utilities system who drive company-
owned vehicles in the course of the
performance of their duties?

We are in receipt of your letter of March 30,
1939, in which you refer to the definition of chauf-
feur contained in Article 6687a, Sec. 1 (g), Revised
Civil Statutes, 1925, as amended by Acts 1937, 45th
Legislature, p. 752, ch. 369, and request an opinion
based on the following question:

"Specifically, does the above defini-
tion of "chauffeur" include linemen,
troublemen, meter readers, meter test-
ers, collector, local manager, an engi-
neer, a mechanic, a department head, and
a power salesman, the duties of each of
said classification being as set out
in the attached letter."

The letter referred to enumerates the duties
of the various classifications of employees and recites

that in the performance of their respective jobs these employees all drive company-owned vehicles. It is admitted that the men who hold the various jobs are in every instance employees of what is presumably a gas utility system.

Article 6687a, Section 1 (g), of Vernon's Annotated Statutes, above more fully identified, reads as follows:

> "Chauffeur.- Any person who operates a motor vehicle for any purpose, whole or part time, as an employee, servant, agent, or independent contractor, whether paid in salary or commission; and every person who operates a motor vehicle which such vehicle is in use for hire or lease."

For the purpose of construing said subsection of Article 6687a, we find it illuminating to review its history.

Senate Bill No. 15, 44th Legislature, 2nd Called Session, General and Special Laws of Texas, Ch. 466, p. 1785, was approved on November 15, 1935, and became law ninety days (90) after the adjournment of the Legislature. It was a law providing for the licensing of operators of motor vehicles.

Section 1 (g) of said law, the same being Article 6687a, of Vernon's Annotated Statutes, before amendment, sets forth a definition of "chauffeur", as follows:

> "Chauffeur.- Every person who is employed for the principal purpose of operating a motor vehicle, and every person who drives a motor vehicle while in use for hire."

According to the above definition, a "chauffeur" was an employee whose principal duty was the operation of a motor vehicle for his employer or any person who operated a motor vehicle and used it for purposes of hire.

Limiting our discussion to the first of the two classifications set out, namely, "every person who is employed for the principal purpose of operating a motor vehicle", it is obvious that the key word which designates the scope of the definition is the word "principal". A person who operated incidentally a company-owned motor vehicle was not an employee within the application of the subsection. The language is clear and explicit. The purpose of the Legislature was obviously to exclude from the purview of the statute the large number of employees who operated company-owned motor vehicles, but were employed for the principal purpose of performing another task and only for the incidental purpose of driving a car or truck, or other type of motor vehicle.

When the licensing law went into effect in 1925, the definition of "chauffeur" contained therein and set out above plainly would not embrace employees like linemen, troublemen, meter readers, meter testers, a collector, local managers, engineers, mechanics, department heads, and a power salesman whose operation of company-owned cars was not the principal purpose of their employment. The definition is a restrictive one and leaves no doubt as to the intention of the Legislature to exclude a large class of vehicle operators from its coverage.

The 45th Legislature, however, at its regular session in 1937, radically changed and revised the definition of "chauffeur" originally

given in Texas Drivers' License Law, same being Arti-
cle 6687a, supra. House Bill No. 16, General and
Special Laws, 45th Legislature, Regular Session, ch.
569, p. 752, revising the Texas Drivers' License Law,
became effective on May 19, 1937. Section 1-A of
House Bill No. 16 reads as follows:

> "That Section 1 (g) of Senate Bill
> No. 15, ch. 466, passed at the Second
> Called Session of the 44th Legislature
> of the State of Texas, and the same is
> hereby amended to read as follows:
>
> 'Section 1 (g) Chauffeur.-Any person
> who operates a motor vehicle for any
> purpose, whole or part time as an
> employee, servant, agent, or indepen-
> dent contractor, whether paid in
> salary or commission; and every
> person who operates a motor vehicle
> while such vehicle is in use for hire
> or lease.'"

It is immediately discernible that the Legis-
lature, in amending its definition of "chauffeur", in
the first part, dispenses the key words "for the
principal purpose of operating a motor vehicle" and
substitutes the equally clear and unambiguous but
much broader language: "who operates a motor vehicle
for any purpose, whole or part time (underscoring
ours).......

The Legislature must be presumed to know
what it is doing. In construing any legislative
enactment, the intent of the legislature and the
clear meaning of the language must be followed.
When the Legislature of the state at one session
renders a definition embodying restrictive langu-
age and then at the very next session redefines
the word removing the restriction and in language

of unmistakable meaning extends the scope of the definition, the intention is clear as crystal and the language must be viewed as indicative of that intent.

The conclusion that the Legislature meant to extend the definition of "chauffeur" to reach the large group of employees who drove company-owned motor vehicles for other than the principal purpose of their employment is inescapable on the basis of both the history of the legislative definition and its wording.

Furthermore, where the Legislature defines a word and that definition is clear and explicit, the courts will not recognize other definitions.

<u>39 Tex. Jur. 200</u>:

> "Where the Legislature has not defined a term employed in a statute, it is within the province of a court to define it according to the settled rules of construction. But when the Legislature defines a word or group of words, which it has power to do and frequently does, the definition being clear and unambiguous, is binding upon the courts as an expression of the legislative intent, regardless of meaning of the word in common parlance or in other connections. This rule is affirmed by a provision of the Penal Code (Art. 8), that 'words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning.'"

<u>Hurt, et al v. Cooper, et al 110 S. W. (2) 896.</u>

Supreme Court of Texas
(1937)

A definition of the word "store" was
involved.  The court said:

"The statute (Chain Store Tax Law
Acts 44th Legislature, First Called
Session, House Bill No. 18, ch. 400)
having defined the word, we are not
concerned with its usual meaning."

State, et al v. San Patricio Canning Co., et al
17 SW (2d) 160

Court of Civil Appeals, San Antonio
(1929)

"The definition, given in the
statute, of a 'wholesale dealer in
shrimp', as being one 'engaged in the
business of buying and selling shrimp'
in the quantities specified, is in
plain language, and when that language
is given its ordinary meaning does not
include a canner of shrimp."

State v. Frost, et al, 16 SW (2d) 331

Court of Civil Appeals, San Antonio
(1929)

"Appellant recognizes the plain
purport of the statute, but attacks
the definition of the term 'tract' as
given by the Legislature.  It does not
matter, however, what the word may mean
in common parlance or how it is custo-
marily used, nor can we set in judgment
on the legislative definition, nor en-
tertain the proposition of appellant

that 'the Legislature has applied a
definition of the term which we do not
find in the dictionary.' For the pur-
poses of taxation in Texas the legis-
lative definition of 'tract' will take
precedence over Webster's Unabridged,
the International, or any other diction-
ary."

The Legislature has the authority to
make its own definition. The fact that a legis-
lative definition might clash with the ordinary
or commonly understood meaning of words would not
render it nugatory. The power of the legislature
to color words in order to give expression to its
intent is recognized by the courts.

It is our opinion that the definition
of chauffeur given in Article 6687a, Section 1 (g),
Vernon's Annotated Statutes, as amended, and above
quoted, is applicable to all persons who meet
three specifications of the definition. First,
such individuals must operate a motor vehicle,
the purpose being immaterial, any reason being
sufficient. Second, the operation may be either
all of the time or part of the time. Third, such
persons must be employees, servants, agents, or
independent contractors. The manner or amount of
payment is immaterial.

Applying these standards to the linemen,
the troublemen, the meter readers, meter testers,
the collector, local managers, engineers, mechanics,
department heads, and power salesman, the descrip-
tion of whose duties simply identifies them as
employees driving company -owned cars in pursuance
of their primary duties, we find that they meet
all the conditions of the definition and as a re-
sult fall within the statutory definition of
"chauffeurs."

A series of New York decisions involving

the same matter having a bearing on the question at
hand.

We first refer to the case of People V.
Fulton, 162 N.Y.S. 125 (1916). In this case it
was held that an employee of a gas company, using
a motor car in his business of trouble hunting, is
a "chauffeur" within the purview of a statute de-
fining a "chauffeur" as any one operating or driv-
ing a motor vehicle as an employee or for hire.
The court stated:

> "The defendant, being an employee,
> is squarely within the prohibition of
> the statute. To hold otherwise would
> nullify the plain language of the law,
> and, in my opinion, the intent of the
> Legislature."

The court then calls attention to a con-
flict on the subject:

> "My attention has been called to
> the case of People V. Dennis, wherein
> the learned county judge of Schenectady
> County, upon similar facts, that the
> employee was not required to have a
> chauffeur's license. I cannot agree
> with him in his interpretation of the
> law, because it seems to me that the
> law referred to permits no exceptions,
> and I cannot read into it that an em-
> ployee can operate an automobile with-
> out obtaining a chauffeur's license.
> I, therefore, affirm the conviction of
> the defendant."

The case of People v. Dennis, 166 N.Y.S.
318 (1915) held that a telephone repairer, using
an automobile furnished him by his employer, for
the sole purpose of conveying himself and necessary

materials from place to place, was not a chauffeur within the purview of the definition discussion in People v. Fulton, supra. The court declared:

> "The only use he made of the motor car was merely incidental to his regular employment."

As pointed out in People v. Anthony, 231 N.Y.S., 591, the controversy in the New York County Courts, was settled by an amendment of the definition which changed it from . . .

> ". . . . .any person operating or driving a motor vehicle, as an employee or for hire . . . ."

to . . . . .

> ". . . . any person who is employed for the principal purpose of operating a motor vehicle . . . ." (underscoring ours)

In other words, the New York Legislature adopted the restrictive definition of a "chauffeur" which the Texas Legislature rejected in 1937.

The history of the New York definition of "chauffeur" substantiates our opinion that there is a clear and definite line of demarcation between the definitions of a "chauffeur" given in Article 6687a, as passed by the 44th Legislature, and in the same article, as amended, by the 45th Legislature.

To exclude from the purview of the latter statutory definition employees who operate company-owned vehicles for any purpose whatever, whole or part time, would be to nullify the plain language of the act and circumvent the intent of

the Legislature.

We wish to point out that Section 3 of Article 6687a, as amended, specifies certain exemptions, but they do not reach the character of occupations under scrutiny.

Attention is called to opinion no. 0-03 of this department holding that a county commissioner while driving an automobile belonging to the county and on county business is not a chauffeur within the meaning of the article under review. This situation is distinguishable from the case at hand in that the decision turns on the fact that a county commissioner is held not "an employee" within the terms of the statutory definition. Opinion No. 0-470 is to the effect that persons employed by A. & M. College, whose duties include operating college owned trucks, fall within the definition and should obtain chauffeur's licenses.

We are in accord with the findings in each of the above opinions, but we cannot concur in the reasoning of the opinion rendered by the Department on July 27, 1939, insofar as the reasoning of that opinion and the conclusions reached conflict with this opinion, we are compelled to overrule it.

It is our opinion that linesmen, troublemen, meter readers, meter testers, a collector, a local manager, an engineer, mechanic, department head, and power salesman, who are employees of a gas utility company operating company-owned motor vehicles in the course of the performance of their duties, are "chauffeurs" within the scope of the definition contained in Article 6689a, Section 1 (g), Vernon's Annotated Civil Statutes, as amended, and that they are required under the law

Hon. Tom Seay, April 14, 1939, page 11

to obtain chauffeur's licenses.

                         Yours very truly

                      ATTORNEY GENERAL OF TEXAS


                   By          Dick Stout
DS:cmb                         Assistant

APPROVED:

ATTORNEY GENERAL OF TEXAS